# STATE EX REL. TOWN OF DOVRAY v. HONORABLE L. S. NELSON, AS JUDGE OF THE THIRTEENTH JUDICIAL DISTRICT.[1]

## January 23, 1920.

## No. 21,699.

**Certiorari — sufficiency of evidence not reviewable in absence of settled case.**

1. The sufficiency of the evidence to sustain an order of the district court, made in the course of drainage proceedings and brought to this court for review upon a writ of certiorari, cannot be considered in the absence of a settled case or certificate of the trial judge as to the accuracy of the record returned. The inquiry is limited to questions of law disclosed by the return to the writ.

**Drain — petition jurisdictional — validity dependent on statute.**

2. Drainage proceedings are purely statutory. Their validity depends upon a strict compliance with the provisions of the statute by which they are regulated and controlled. The petition instituting such proceedings is a jurisdictional prerequisite of the authority of the court to act, and its effect is to be determined from the provisions of the drainage statute.

**Consolidation of drainage systems — construction of statute.**

3. Chapter 441, Laws 1917, authorizing the consolidation of two or more drainage systems, is to be read and interpreted in connection with the general drainage laws of the state and the statutes it amends. It does not authorize proceedings in the district court designed to secure the removal of defects in two existing county ditches, and the more efficient drainage of lands in two drainage systems, by cutting off a portion of one of the main ditches and connecting it with the other so as to carry the surplus waters of a drainage basin through a ridge surrounding it and away from their natural outlet from such basin and to extend, deepen and widen the ditches in both drainage areas in order that the adjoining lands may be properly drained.

After the proceeding reported in 142 Minn. 494, 171 N. W. 922, and upon the relation of the Town Board of Dovray, the supreme court grant-

[1]Reported in 176 N. W. 181.

ed its writ of certiorari directed to Honorable L. S. Nelson, judge of the Thirteenth judicial district, to review an order of that court consolidating, extending and improving ditches Nos. 4 and 24. Reversed.

*Korns & Mitchell, F. S. Brown* and *M. J. Harrington,* for relator.

*Robinson & English,* for respondent.

LEES, C.

An order of the district court for the consolidation, extension and improvement of the two drainage ditches in Murray county, and for the assessment of the cost thereof on benefited property, is brought here for review upon a writ of certiorari. A similar order in the same proceeding was here before and was reversed for want of notice to the interested parties. State v. Nelson, 142 Minn. 494, 171 N. W. 922.

A petition of the county board asking for the consolidation of county ditches Nos. 4 and 24 was filed with the clerk of the district court as provided by section 17, c. 441, p. 719, Laws 1917. It appears from the court's findings that ditch No. 4 is shallow and open and extends in a southeasterly direction through the towns of Murray and Dovray to its outlet in a ravine leading to the Des Moines river. It has not properly drained the area it was intended to drain. To be effective it must be widened, deepened, extended, and numerous laterals must be connected with it. Ditch No. 24 is located in the towns of Murray and Shetek, and extends in a northwesterly direction from a body of water known as Slaughter Slough to a stream flowing into Lake Shetek. Slaughter Slough lies in a depression into which the surface waters from about 1,200 acres of land find their way. It has no well-defined outlet and is surrounded by a low ridge or divide. The lowest place in the ridge is northwest of and 5.5 feet above the ordinary water level in the slough. Before ditch No. 24 was constructed, when the water in the slough reached a sufficient height it flowed through the ridge at this place and naturally found its way to Lake Shetek. Much of the ditch consists of tile pipes of insufficient capacity to carry off the waters in the Slaughter Slough basin.

The petition asked that the outlet to ditch No. 24 be extended northwesterly; that the upper portion of the ditch be cut off from the lower portion and connected with ditch No. 4 by large tile pipes laid through

the Slaughter Slough ridge at a depth of 29.55 feet, and that No. 4 be widened and deepened throughout its entire length. It was alleged that this was necessary to furnish a proper outlet for the two ditches and to drain and protect from overflow the lands adjoining them. Several landowners and the town board of the town of Dovray and of other towns opposed the granting of the petition. There were two successive hearings at which considerable testimony was taken, but the sufficiency of the evidence to sustain the order cannot be considered, for the reason that there is no settled case or certificate by the trial judge as to the accuracy of the record returned. State v. District Court of Thirteenth Judicial District, 140 Minn. 375, 168 N. W. 184. Our inquiry is, therefore, limited to such questions of law as are disclosed by the return to the writ. State v. District Court of Hennepin County, 83 Minn. 464, 86 N. W. 455; State v. Dunn, 86 Minn. 301, 90 N. W. 772.

Drainage proceedings in this state are purely statutory and their validity depends upon a strict compliance with the provisions of the statute by which they are regulated and controlled. Curran v. County of Sibley, 47 Minn. 313, 50 N. W. 237; Lager v. County of Sibley, 100 Minn. 85, 110 N. W. 355. The petition by which such proceedings are instituted is a jurisdictional prerequisite of the authority of the court to take action, and its effect in limiting the proceedings is to be determined from the provisions of the drainage statutes. State v. Watts, 116 Minn. 326, 133 N. W. 971. This rule should not be disregarded because the statute is to be liberally construed to carry out its object.

It is conceded by all that the proceedings now under review were begun and carried on pursuant to the provisions of chapter 441, p. 692, Laws 1917. The important question is whether this statute authorized the proceedings and empowered the court to make the order which was entered. The statute is not free from ambiguity. It is to be read and interpreted in connection with the general drainage laws of the state, Wold v. Bankers Surety Co. 133 Minn. 90, 157 N. W. 998, and with section 5605, G. S. 1913, of which the act of 1917 is an amendment. State v. District Court of Ramsey County, 134 Minn. 131, 158 N. W. 798. When so read and interpreted, it becomes fairly clear that it does not authorize the proceedings which were had in the district court. Section 5605, G. S. 1913, before it was amended, merely authorized the court,

145 M.—3.

on a proper petition, to consolidate two or more ditch proceedings when it appeared that one common outlet would be sufficient for all the ditches involved. The purpose of the original statute was to join several ditches having different outlets in such manner that one outlet would serve for all of them and to spread the cost of providing such outlet over all the lands drained by the several ditches.

The material portions of the amendment of 1917 are as follows:

"In any case where one or more ditches   *   *   *   whether open or tiled, whether public or private, shall have been   *   *   *   constructed *   *   *   the waters from which   *   *   *   empty into any creek, draw, watercourse or body of water   *   *   *   and the construction of said ditch   *   *   *   shall cause or is likely to cause, by reason of the added waters, the overflow of the waters of said creek, draw, watercourse or body of water, and the inundation of the adjoining land, then and in that event, upon the filing of a petition by the county board   *   *   * or   *   *   *   freeholders whose property is affected by such overflow *   *   *   setting forth   *   *   *   the conditions of said creek, draw or watercourse, or body of water and outlet, and the necessity for the improvement of said outlet, and if need be the controlling of said waters therein or in said body of water, or both, and that said proposed improvement will be a public benefit   *   *   *   and protect said land from overflow, and asking for the consolidation of all said ditches   *   *   *   connected with or emptying its waters into said outlet or into said body of water into one system, and the extension of the same so as to furnish a proper outlet for all waters of said basin that naturally drain into or through said outlet,"[1] an order, etc., shall be made by the judge of the district court.

In the present case it is proposed to run the waters of the Slaughter Slough basin away from Lake Shetek, into which they naturally found their way before any ditches were constructed, and to carry them through the divide and add them to those which are drained into the Des Moines river by ditch No. 4. Complete consolidation of ditches Nos. 24 and 4 will not be had, for the lower portion of the former is to be cut off from the upper portion. The end to be attained is not the protection from inundation of the lands which adjoin or lie beyond the present outlets of the two ditches. It is proposed to remedy the insufficiency of two ex-

[1][Laws 1917, p. 719, c. 441, § 17.]

isting drainage systems by diverting the surplus waters in the basin of one system to the main ditch in the other system and by deepening and widening the ditches in and extending the outlets of both systems. The drainage of Slaughter Slough and of lands now imperfectly drained by existing ditches is to be improved. Defects in the two drainage systems, which are attributed by the engineers to faulty plans and poor conditions, are to be removed in order that there may be better drainage of the lands included in both systems. Doubtless the defects should be remedied, and specific authority may be found in the general drainage statutes for proceedings to remedy them. Section 5552, G. S. 1913, as amended by section 6, c. 300, p. 434, Laws 1915, charges the county board with the duty of acting in such cases and authorizes it to proceed substantially as upon an original drainage petition.

We reach the conclusion that the facts presented by the record do not bring the case within the scope of the amendment of 1917. It may be true that the plan made by the engineers and adopted by the order of the court is the only one by which satisfactory drainage may be had economically. However we are not concerned with the merits of the proposition from an engineering or financial standpoint, but solely with the question whether the statute under which these proceedings were conducted can be construed to authorize them. We answer that question in the negative. The result is that the order under review must be and it hereby is reversed.