# STATE ex rel. VILLAGE OF DELANO v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 12, 1911.

Nos. 16,973—(22).

**Railway — protection of highway crossings.**

Chapter 280, Laws 1905, as amended by chapter 396, Laws 1907, does not vest in the board of railway commissioners exclusive authority and jurisdiction to order and require the construction by railroad companies of bridges, or the installation of safety devices at highway crossings.

**Vacation of street by village council.**

A resolution of a village council unconditionally vacating a public street, not shown to have been the result of proceedings duly had as required by law, *held* void and of no effect.

**Same — evidence.**

Certain resolutions of a village council vacating upon condition a certain street as it extended over the right of way of defendant, not shown to have been requested or solicited by it, *held* improperly received in evidence as a recognition of the existence of the street by the defendant.

**Findings — evidence.**

Certain findings *held* not sustained by the evidence.

Upon the relation of the Village of Delano, the district court for Wright county granted a writ of mandamus directed to defendant, requiring it to construct and maintain a crossing under its tracks where the same cross Second street in that village, or show cause why it had not done so. Defendant's answer alleged that its railway right of way, to the full width as laid out, was acquired by defendant and its predecessors in interest prior to the laying out of Second street; that its use by defendant and its predecessors had been continuous for more than twenty years prior to March 18, 1899; that such use had been open, hostile and adverse to the claims of any other person, including plaintiff; that Second street in the village of Delano was never laid out, opened or extended across the right of way of

[1]Reported in 131 N. W. 330.

defendant; denied that any statute or law compelled it to construct or maintain the crossing or bridge demanded in the alternative writ; alleged that the cost of changing the crossing as demanded would be more than $3,000, besides the cost of maintenance, and that relator, by its council, passed a certain ordinance directing defendant to construct an underground crossing, and, if enforced, such ordinance would violate the provisions of the state and federal constitutions. The reply was a general denial.

The matter was heard before Giddings, J., who made findings of fact and as conclusion of law directed that a peremptory writ of mandamus issue directed to defendant, commanding it to construct at its own cost a safe, suitable, convenient and proper crossing or passage through the embankment and under its tracks at the intersection of the same with Second street, together with the necessary approaches thereto, ample and sufficient for the safe, suitable, free and convenient passage and travel of the people of the village of Delano and the traveling public, and thereafter to continuously maintain the same, and that the crossing and approaches be constructed and maintained at a width equal to that of the adjacent portions of Second street. From an order denying defendant's motion for a new trial, it appealed. Reversed and new trial granted.

*Brown, Albert & Guesmer, J. D. Armstrong* and *W. L. Clift,* for appellant.

*F. E. Latham* and *Henry Spindler,* for respondent.

BROWN, J.

Proceedings in mandamus to compel defendant to construct and maintain a suitable crossing under its tracks, as they extend over and across what relator claims to be Second street in the village of Delano. After a trial before the court, findings were made and judgment ordered in relator's favor for the relief demanded. Defendant appealed from an order denying a new trial.

Defendant's railroad was laid and constructed through what is now the village of Delano some time during the year 1868. Subsequent thereto the owner of the land platted several blocks, subdivided into lots, upon each side of the right of way, as the town

of Crow river. The plat, duly authenticated, was filed for record on October 10, 1868. The line of the railroad runs east and west, and the plat shows a street on each side thereof and running parallel with the road, designated, the one on the south, Franklin avenue, the one on the north, Railroad avenue. Streets at right angles with the road, and running north and south, are, by the plat, laid up to the right of way only, and do not extend across the same. The two streets shown by the plat are River street, and Second street. River street extends along the banks of Crow river. Other land adjacent to the track was platted, and Third and Fourth streets laid out up to, but not across, the right of way. Each of these streets, if extended over the right of way, would connect with a corresponding street on the opposite side. All this territory was included within the village of Delano by the act incorporating the village in 1876. Sp. Laws 1876, p. 79, c. 17. In 1904 the defendant raised the grade of its road as the same extends through the village, and the embankment thereof at Second street was made about twelve feet above the level of the adjacent ground.

Relator seeks to compel an opening in the roadbed, so as to permit travel upon and the use of this street across the right of way. It is not claimed by relator that a street was by the plat laid across the right of way. The precise contention is that since the construction of the road in 1868 the people generally have made use of the right of way at the point where, if extended, Second street would cross the same, and that a public way has become established by dedication and user. This presented the substantial question on the trial below. In support of the motion for a new trial, defendant complains of certain rulings on the admission of evidence, and in other respects, and that the findings of the court are not sustained by the evidence. These we will dispose of in their logical order.

1. It is contended by defendant that the court has no jurisdiction of the controversy, and that relator's remedy is by an application to the board of railroad commissioners, under chapter 280, p. 413, Laws 1905, as amended by chapter 396, p. 553, Laws 1907. That statute authorizes the board of railroad commissioners, by pursuing the procedure therein prescribed, to order improvements of this char-

acter; but we are of opinion, and so hold, that it was not the intention of the legislature to thereby vest in the board exclusive authority in such cases.

2. It is also contended by defendant that if the street in question ever became, by dedication or otherwise, a legal public highway over and across the right of way, it was vacated, and the public easement therein relinquished and abandoned, by a resolution of the village council in June, 1885. The resolution referred to unconditionally vacated that portion of the street extending over the right of way. There was, however, no evidence that there was a compliance with the statutes providing for and authorizing such action. No petition, as required by section 1246, G. S. 1894, was presented to the council asking for a vacation of the street; nor does it appear that any public notice was given of the contemplated action by the council. The resolution does not recite the necessary jurisdictional facts, and the rule laid down in Cassidy v. Smith, 13 Minn. 122 (129), does not apply. It is not a case of lost records, which might justify the presumption that the proceedings were regular and in conformity with the law; for there is no evidence that the records ever in fact existed. Hurley v. City of West St. Paul, 83 Minn. 401, 86 N. W. 427. The only inference from the evidence is that no petition for the vacation of the street was ever presented to the council. No presumption can therefore arise that the resolution was the result of a proceeding regularly commenced and conducted. It did not, then, have the effect contended for by defendant, namely, of vacating the street.

3. Defendant also complains of the ruling of the court in admitting in evidence certain records of the village council, by which the street in question appears to have been, upon the application of the railroad company, vacated as it extended over the right of way, upon certain specified conditions. The purpose of the evidence, as stated by counsel for relator, was to show recognition on the part of the company of the existence of the street over the right of way. We are of opinion that these records and resolutions were erroneously received in evidence. We fail to discover from the record before us that the company ever petitioned for or requested the council to take

the action shown by the village records, except as recited in the reso-
lutions. There is some evidence that members of the council talked
with the station agent and with the roadmaster about the matter;
but we find nothing tending to sustain the view that the proceed-
ings before the council were taken at their request. On the con-
trary, that the proceeding was initiated by the council of its own
motion would seem fairly conclusive from the records themselves.

On April 7, 1882, the records disclose that, upon motion of a
member of the council, a committee was appointed to "confer with
and submit conditions to the railroad company upon which a part
of Second street be vacated and granted for depot grounds." It
appears inferentially that this committee, pursuant to the authority
thus conferred, submitted some sort of a proposition to the railroad
company, just what it does not appear, and that the company re-
jected it and returned the same with amendments. The amend-
ments proposed by the company were rejected by the council. The
record is silent as to what the amendments proposed by the company
were, or what position it took in the matter. For aught that ap-
pears, the company may have insisted upon a disclaimer of the exis-
tence of the street over the right of way. Clearly, upon the facts
disclosed, the records of the council were improperly received in
evidence. That they were considered by the court is shown by the
findings. They were offered for the purpose of showing a recogni-
tion of the street by the railroad company, and in its findings the
trial court affirms that the company did recognize the existence of
the street. We find no evidence of recognition, other than as con-
tained by inference in the records.

The contention of relator that the error was without prejudice is
not sustained. The rule laid down in Hogan v. Vinje, 88 Minn.
499, 93 N. W. 523, does not apply. In that case the objectionable
evidence was received subject to objection, and was subsequently
eliminated from the case by the court, and not considered. In the
case at bar the records were received subject to the objection, an
exception noted in defendant's favor, and the evidence was subse-
quently considered by the court.

4. The trial court found that "in and prior to the year 1868 there

was and existed in the said village of Delano a certain public street and highway, known as and called 'Second street,' " and that during the year 1868 the predecessor in interest of defendant constructed its line of road over and across said street as so found to exist prior to the appearance of the railroad. Stress is laid upon this finding by relator, and it is contended therefrom that the street was first in time, and that defendant's road was constructed upon and across it. We find no evidence in the record to sustain this finding. There may have been a road or way for the passage of teams, at the point where Second street now exists, prior to 1868; but no evidence was offered tending to show that it was ever laid out as such, or otherwise became a legal public highway. The only evidence of this street, giving it legality as a highway, is found in the official plat, and by that it did not cross the right of way of the defendant. That the plat was prepared subsequent to the construction of the road is clear from the evidence. There was therefore no public highway over which the railroad was constructed, and the court erred in so finding.

5. That the court was induced to reach the conclusion announced in its findings by the fact just referred to, and the further consideration that the records of the village council conditionally vacating the street disclosed a recognition of its existence by defendant, is quite clear from the record; and for the error in the findings, and in the admission of the village records, a new trial must be granted.

6. In view of which we may say in conclusion that, if a public street or highway became legally established over the right of way, it became so established by dedication or user prior to 1885, and what took place between the defendant and the public officials during the change of the railroad grade in 1904 and subsequently would have no pertinent bearing upon the question of rights acquired prior to 1885. Following the resolution of the village council in 1885, unconditionally vacating the street over the right of way, defendant constructed its depot and platforms upon what would be Second street if extended over the right of way, and thereby completely occupied the space which the street would occupy. This action by the company was under color of right, and adverse to any asserted right of easement in the public, and effectually interrupted

the public use theretofore enjoyed. This adverse occupancy has continued, as we understand the situation, down to the present time, except that the depot has been removed, and a high embankment now obstructs travel over the right of way at this point. Therefore, if no highway by dedication or user became established prior to 1885, none now exists, and the relator must fail.

We may also say that, in the absence of some tangible evidence of a recognition by the defendant of the rights of the public prior to 1885, the evidence now before the court of the uses to which the street was subjected during previous years is insufficient to establish a highway by dedication or user under the statutes. There was no express dedication by the defendant, and none can be implied from the fact that a large number of the inhabitants made use of the street to transact business with the company at its depot.

Order reversed, and new trial granted.