SAMUEL H. GRANNIS v. H. M. HITCHCOCK and Another.[1]

July 12, 1912.

Nos. 17,592—(196).

**Absolute deed held to be a mortgage.**

The finding of the trial court that a quitclaim deed from a mortgagor to the mortgagee of the premises was given upon an oral agreement by which the mortgagor was given the right to a reconveyance at any time upon payment of the mortgage debt and interest is sustained by the evidence.

**Ruling on admission of evidence — review upon appeal.**

Where a ruling on the admission of evidence is not excepted to, and there is no motion for a new trial in which such ruling is specified as error, the ruling cannot be reviewed in this court.

**Action to redeem from mortgage — rental value.**

In an action by a mortgagor to redeem mortgaged premises, where the mortgagee has been in possession, the latter should be charged with the fair rental value of the premises while he had possession. The finding as to such rental value in this case is sustained by the evidence.

**Refusal to amend findings.**

There was no error in the refusal of the trial court to amend its findings as requested.

. Action in the district court for Blue Earth county against H. M. Hitchcock, as guardian of the estate of Horton W. Nelson, an incompetent, and Horton W. Nelson, to have two deeds declared to constitute a mortgage; for an accounting of the rents and profits of the premises during the possession of defendants; to permit plaintiff to pay defendants, or into court for their use, such sum as shall be found due from him to defendant Nelson, and that thereupon a reconveyance of the premises to plaintiff be made by proper deed of conveyance. The answer denied that the reasonable rental value of the lands had ever been $480 per annum or any sum in excess of $200; admitted that Nelson had paid the taxes since 1900 and alleged that he

1 Reported in 137 N. W. 186.

had paid in taxes, fencing, improvements to buildings and other improvements since that date approximately $2,000; that defendant Nelson had lost his faculties to such an extent that he was unable to recall past business transactions; that defendant Hitchcock had no knowledge as to what was the consideration for the warranty deed; that he believed that the quitclaim deed was a sale of whatever interest plaintiff had in the premises for $7,200, being in part for advances theretofore made to plaintiff by Nelson and in part for a new consideration; that pursuant to the intention that the land should pass to Nelson, plaintiff sold the land and Nelson went into possession thereof. The reply was a general denial.

The case was tried before Pfau, J., who made findings and as conclusion of law found that the warranty and quitclaim deeds and the agreement of the parties constituted a mortgage, that plaintiff was indebted to defendant in the sum of $8,264.73 and that upon payment of that sum defendant should convey the premises to plaintiff by proper deed. From the judgment and from an order denying defendants' motion to amend the findings, H. M. Hitchcock, as guardian, appealed. Affirmed.

*Janes, Howard & Janes* and *Miles Porter,* for appellant.

*H. L. & J. W. Schmitt,* for respondent.

BUNN, J.

This is an action to have deeds absolute on their face declared to be a mortgage, and to direct a reconveyance of the premises to plaintiff upon his payment of the sum found due from him. The issue was as to whether defendant Nelson was the owner in fee of the land, or whether plaintiff was the owner, subject to a mortgage in the form of a quitclaim deed, with an oral agreement giving plaintiff the right to a reconveyance on payment of the indebtedness. There was a decision in favor of plaintiff. This appeal is from the judgment entered on such decision.

The questions here are: (1) As to whether the findings are sustained by the evidence; (2) as to whether there was any prejudicial error on the trial, duly excepted to by defendant. A statement of the admitted facts follows:

Plaintiff in 1893 was the owner of a quarter section farm in Blue Earth county. He was indebted to Horton W. Nelson in the sum of $1,200, and to secure the payment of this indebtedness, and further advances, gave to Nelson on October 27, 1893, a warranty deed of the farm. Thereafter, and until December 18, 1899, plaintiff remained in possession of the farm, and during this time Nelson advanced and loaned further sums of money to plaintiff. The total amount of plaintiff's indebtedness to Nelson, secured by the warranty deed, was on December 18, 1899, $6,437. On that date plaintiff and his wife executed and delivered to Nelson a quitclaim deed to the land, which recited a consideration of $1. At this time Nelson delivered up to plaintiff a contract to convey, which had been made in 1896, and all notes of plaintiff which evidenced the indebtedness secured by the warranty deed. He also gave plaintiff his own note for $633, and deeded to him certain lots in St. Paul and other property which he held as additional security. Upon the giving of the quitclaim deed Nelson went into possession, and has remained in possession ever since, taking the rents, paying taxes and insurance, and making improvements. During these eleven years Nelson had no note or other obligation of plaintiff, and it was never demanded or suggested that plaintiff pay any interest, and he paid none, though prior to 1899 he paid interest regularly. In 1907 Nelson was adjudged incompetent, and defendant Hitchcock was appointed guardian of his estate. Plaintiff acted as one of the appraisers of Nelson's estate, and inventoried the land in question as belonging to Nelson. In a letter written in February, 1908, to one of Nelson's relatives, plaintiff speaks of the appointment of himself and his brother as appraisers, and says: "Our only interest in this matter is that Mr. Nelson is an old friend and neighbor, and we do not want to see his property wasted, but preserved for his use while he lives, and then, when he is gone, to save it for his heirs."

It must be conceded that the facts above recited, all admitted or conclusively established, make a strong case in favor of defendant's contention that the transaction in 1899 put an end to the relation of mortgagor and mortgagee that admittedly existed before, and made Nelson the owner in fee of the farm. The evidence to show

that, notwithstanding the quitclaim deed and the radically changed relations of the parties, plaintiff still had a right to a conveyance of the farm upon payment of the indebtedness as it existed in 1899, with interest, consisted wholly in the oral testimony of plaintiff, his wife, and his attorney. This was to the effect that Nelson requested the quitclaim deed, and the giving up of the contract and notes of plaintiff, in order to avoid the payment of taxes on the money loaned to plaintiff; that he and plaintiff orally agreed that, notwithstanding the deed, plaintiff was to have the right to "redeem," or pay up the debt, and receive a reconveyance at any time. The testimony of plaintiff is clear and explicit, as is that of his attorney, and the testimony of plaintiff's wife is corroborating. The trial court credited their evidence against the record and documentary evidence that showed the facts of which we have above given a synopsis.

It cannot be said to a certainty that the oral agreement testified to is wholly inconsistent with the admitted or undisputed facts, and we must hold that the decision of the trial court cannot be disturbed. It is true that plaintiff and his wife were interested witnesses, and that plaintiff's attorney, by reason of family and professional relationship to the plaintiff, may be deemed not entirely a disinterested witness. It is true, also, that Horton W. Nelson was by insanity prevented from giving his version of the transaction. But it is not for this court, ordinarily, to determine the credibility of witnesses. The trial court believed the witnesses for plaintiff, and, whatever the rule as to the amount or character of evidence necessary in a case of this kind, we are unable to say that the decision is not sufficiently sustained, or that there was an abuse of discretion in denying a new trial.

This is not the usual case of a deed absolute on its face shown by parol evidence to be a mortgage. Here the relation of mortgagor and mortgagee admittedly existed at the time the quitclaim deed was given. It is, therefore, rather a case of the purchase by the mortgagee of the mortgagor's equity of redemption. Such a transaction is valid, if the purchase was in good faith and for a fair consideration; but equity scans such sales with jealous care, and requires their fairness to be clearly established. De Lancey v. Finnegan, 86 Minn. 255,

118 M.—30.

90 N. W. 387. If there was in fact an oral agreement by which plaintiff was given the right to redeem at any time, the transaction was not an actual purchase of the mortgagor's equity of redemption; but the relation of mortgagor and mortgagee still existed, notwithstanding the deed, the delivery of possession, and the other evidences of a change in the relations of the parties.

We reach the conclusion that the findings are sustained after a full consideration of all the evidence, and with a full appreciation of the strength of defendant's case. We cannot assume the functions of a trial court. The question was purely one of fact, the evidence was conflicting, and we find no grounds for saying that the trial court was not justified in believing plaintiff's witnesses.

2. Error is assigned in the admission of the testimony of plaintiff as to conversations with Horton W. Nelson, over the objection that it was testimony of conversations with a person since become insane, and therefore inadmissible under the statute.

The record shows that the law as to the admissibility of this evidence was argued "pro and con by counsel," and that the court reserved its ruling and received the evidence. At the close of the direct testimony of plaintiff, defendant moved to strike from the record all the testimony of the witness in regard to conversations with Nelson, for the reason that the latter was proven to be insane. This motion was denied, but no exception appears to have been taken to the ruling. So far as the record shows, this was the only effort of defendant to obtain a ruling of the court after the testimony was received subject to the objection. Treating the denial of this motion to strike out the testimony as a definite and final ruling of the court, it is plain that the error, if error there was, is not before us for review. No exception having been taken to the ruling, defendant could only take advantage of the error by a motion for a new trial in which the ruling was specified as error. No motion for a new trial was made in this case. It follows that the question is not properly before us for decision. Stitt v. Rat Portage Lumber Co. 98 Minn. 52, 107 N. W. 824. The motion to amend the findings, by adding a finding that defendant was insane, did not raise the point.

3. The finding of the trial court that the rental value of the farm

while defendant was in possession was $400 per annum is attacked as not sustained by the evidence, and it is claimed that the court should have charged defendant with only the actual receipts during the time.   We think that the finding is fairly sustained, and that the trial court correctly ruled that defendant should be charged with the rental value, rather than with the actual profits received.   2 Jones, Mortgages, § 1122.

4. There was no error in the court's refusal to find the evidentiary facts requested by defendant.

Judgment affirmed.